Okay, our third and final case for today and for this week is R.J.'s International Trading, LLC v. Crown Castle South, No. 22-11977. Mr. Pierre. Good morning, Your Honor. May it please the Court. My name is Faudlan Pierre. On behalf of the appellant, which I will refer to as RJI, the District Court ruled that the payment of attorney's fees can never constitute a covenant running with the land, even when, as here, the payment is made to make the landowner whole due to the losses suffered as a result of vindicating important property rights. The District Court's ruling was at odds with both the plain language of the easement agreement, which explicitly binds successors, as well as Florida law. Let me ask you, I'm sorry. No, no, you go ahead. Three factors, as I read the law, must be met in order to satisfy the proposition that a covenant runs with the land and therefore binds the non-covenanting parties. First, the covenant must touch and concern the land. Third, the party against whom enforcement is sought must have had notice of such restriction. We agree that's the classic statement of Hornbook law on the issue, right? We agree, Your Honor. Okay, help me with the first. For a covenant to touch and concern the land, it must affect the mode of enjoyment of the premises. That would be a fair statement among other things of Florida law on that point, would it not? Florida law, specifically as the Florida Supreme Court quoted the mall from the third district DCA test, which says the question whether covenant runs with the land does not depend upon the covenant being performed on the land itself. Its performance... No, I didn't say that. I quoted specifically from Winn-Dixie, which cited the Supreme Court of Florida in Dunbarton, and it said to touch and concern the land, the covenant must, quote, affect the mode of enjoyment of the premises. My question is, how does the attorney's fee provision meet that test? Does that in any way affect the mode of enjoyment or impact the property's occupation or enjoyment or in some way enhance the value of the property or render it more convenient in some way to the owner? Yes, it does, Your Honor. Okay, tell me how. The reason why is the purpose for the attorney's fees provision is to make the litigant whole for the reimbursement of the land. The essential nature of the attorney's fees provision in this case, this is a perfect example. The litigation before the court, the client received about approximately $40,000. The litigation fees in this case ran far exceeding that. What was beneficial to the client is that he has a way and an access to the courts to vindicate the rights. Rational land owners will not proceed with a claim to enforce the violation of an easement agreement if it would cost them more to litigate the property right than the value that they receive from the actual verdict and the damage itself. If you look at law from other jurisdictions, there isn't much of it, and it seems to be roughly divided. Whether or not attorney's fees provision with regards to easements, with regards to leases, with regards to restrictive covenants run with the land. What are we to make of the lack of real help from other jurisdictions? I would turn this court's attention to the opinion in Hayslip, where essentially in Hayslip, the Florida Supreme Court has said that an arbitration provision ran with the land. When we look at what the nature of an arbitration provision is, it's simply a form. If an arbitration provision which designates the form runs with the land, then the associated remedies, therefore, would also run with the land. Help me with Florida law. I read that, and then I read Kalk v. Orange County, the fifth and in that case, the court, the intermediate appellate court determined whether a covenant requiring a payment to the grantor of any funds received resulting from subsequent condemnation or eminent domain proceedings ran with the land. The grantee sold the property 15 years later when the grantor learned of a pending condemnation action on the land that she had sold. She moved to intervene and for an apportionment. The trial court held and the appellate court affirmed that the covenant was personal in nature and did not run with the land. And this is the language from the opinion I want to quote to you and ask you whether it does not illuminate our question. It's plainly not on all fours. It's not an attorney provision, but it does say the following. The covenant in Kalk's deed to Hibbard is incapable of running with the land. Although the covenant concerns the land, it does not so only tangentially. Unlike covenants respecting mineral rights and crops, for example, which directly impact the use of the land, the covenant in the instant case has no effect whatsoever on the land. The only thing the covenant in the instant case really touches and concerns is the intangible property, namely cash that may be paid by a condemner. They're saying the subsequent pass of cash, whatever it is, is not something that runs with the land. It's distinct analytically. Is that case binding on me? The answer is yes. Is that case distinguishable or different from our case? I don't know. Maybe. Tell me why that case doesn't illuminate what we're talking about here, which is a provision later to pay attorney's fees on a maybe you'll get it and maybe you won't basis runs with the land. I would first point you to the Harvey case, which we cited in our brief, which is exactly the same case. It was regarding the payment of an eminent domain proceed to a successor. In that case, the reasoning, I believe, is binding on this court where it essentially says the language in the easement agreement said that it was binding on the successors. For example, in our easement agreement, the successor is a denominated party. In our easement agreement, there's a covenant running with the land that essentially says that it's binding and nearing to all those who claim through it. No one here questions that my client, as well as the appellee, had the right to enforce the easement agreement. Let me help me with this. I understood you to be saying that the reason the language I read to you is of no moment here is because it was dicta. That's what the second DCA said. I understand. I appreciate that they said it. I confess to you, having read Calk five times, whether it was right or wrong, I'm bound by it, but it sure doesn't sound like dicta to me because they made both arguments in the case. They dealt with the intended question, but they also dealt with whether it otherwise runs with the land and it does so only tangentially. So assume with me for a moment that I'm right, that this wasn't dicta. This was part of the holding, or if you will, two alternative holdings, either of which may be right or wrong, but I'm bound by it if it speaks for the law of Florida. How do we get around that? How do we distinguish factually the Calk case from an attorney's provision? Factually is, in this case, the attorney's fees provision directly relates to the vindication of an important property right. In an eminent domain proceeding, it essentially is saying, here's a payment for the land in the value of. Here, the only reason my clients brought the enforcement action was to have, to enforce the easement agreement provisions. In order to make my clients whole, the attorney's fees provision with all of the other associated remedies in the remedies provision, such as the damages and the specific performance in the injunctive, are necessarily tied to the vindication of those property rights, as opposed to an eminent domain proceeding, which is essentially saying you're entitled to payment for the land taken. If we take Calk as providing a holding, as Judge Marcus suggested, and we take Harvey as disagreeing with Calk, we've got . . . They both deal with the eminent domain scenario. They don't deal with attorney's fees, but to the extent you're looking for help, those two cases are at odds with each other. Do we certify the question to the Florida Supreme Court? Your Honor, if there's any doubt, we on the appellate would employ this court to certify the question. We believe that Hayslip, because the nature of the legal proceeding and the attorney's fees, is a closer question, and therefore, if you assume that deciding or designating a legal form can run with the land, the necessary conclusion and the natural conclusion would be the associated remedies with the designated form also runs with the land. The reason I ask you about whether it's dicta or holding is from the very face of Calk itself, in the final penultimate paragraph, this is what the fifth DCA says. And I quote, because Calk has not shown that the covenant touches and concerns the land, or I put it in the disjunctive, that the covenant was intended to run with the land, the court's order is affirmed. And they only say that having first discussed whether it ran with the land, and then goes on to the question of intent to say, further, even if this covenant could run with the land, nothing in the deed suggests it was intended to do so. And again, the conclusion, Calk has not shown that the covenant touches and concerns the land or that the covenant was intended to run with the land. Either way, they're both holdings of the court. If that's clear, if that's right, if a DCA case says, we hold A, about Florida law, and we're having a second holding, an independent alternate ground for the basis of the holding, and it's B as well. We hold two things, and they say it in a manner that's crystal clear. And then another DCA comes along and says, we read the first DCA as having only held A and not B. And then it comes before a federal court sitting in diversity. Do I have to certify such a question to the Florida Supreme Court if the answer is as clear as a bell? In this situation, I would- Well, take my hypothetical. In your hypothetical, I would say if the answer was clear, which I do not- Okay, we can dispute whether it is clear. But if indeed the first DCA holds A and B, and another DCA comes down the road and says they only held A, am I bound by the second DCA, or does it create a sufficient, imponderable, inscrutable question about Florida law that yields the conclusion that I should go to the Florida Supreme Court and say, tell me what this means? I would say it does, Your Honor. Okay. Implicitly, by saying that the second DCA is saying the fifth DCA was holding that it was dicta, it was necessarily calling that paying eminent domain proceeds is sufficiently touches and concerns the land meeting the first element of a covenant running with the land. But I would also like to give the court some examples where payment sufficiently constitute a covenant running with the land. One is regarding paying monthly assessments with condominium. Those covenants, there are no doubt, those run in touch and concern the land. Another example is the issue- You've gone way over your- I apologize. We've taken you way over your time, so it's not you, Mr. Pierre, it's us. But you have 30 seconds if you want to wrap up your initial argument, and then we'll turn to your colleague on the other side. Yes. In the case of PGA North 2nd, the Florida LLC Division of Administrative Affairs, and the citation is 126 Southern 3rd, 1150. In that case, it says that a damage ordering that the Department of Transportation pay compensation for damage to remainder of property not taken if access to the main road was not provided, that also constituted a covenant running with the land. So I will reserve the remainder of my time for rebuttal. All right, thank you very much.  Ms. Kahn. Good morning, Your Honor. Good morning, counsel. May it please the court, Eve Kahn from Baker Donaldson on behalf of the appellee here, Crown Castle South. I have a question. Yes. Because obviously the district court relied a lot on COC. COC is a 1995 decision from the 5th DCA. And Hayslip is a 2022 decision from the Florida Supreme Court. And I think that there's, at least for me, there's a little bit of a, I mean, obviously, Hayslip is not on point, but there seems to be sort of a direction that the Florida Supreme Court is going, which is different than where COC was. And when you look at Hayslip, the issue there was that the Hayslips were not bound by the arbitration provision because it was not a covenant running with the land. And Justice LaBarga, writing for the court, said, the arbitration provision touches and concerns the property itself because it affects the mode and enjoyment of the premises. Moreover, the thing that's required to be done in the present case, arbitrate the dispute, touches the enjoyment of the land because the Hayslips benefit from the defective stucco being resolved. For all these reasons, we conclude that the arbitration provision touches and involves the land. And that's a opinion from the Florida Supreme Court where it was unanimous and everyone agreed from 2022. So is there not sort of a discrepancy between COC finding that that particular provision did not run with the land and the Hayslip provision, the Hayslip decision from the Florida Supreme Court? Thank you for your question, Judge Lagoa. I don't think that there is a distinction that warrants a reversal of the district court's opinion. And that's because Hayslip specifically deals with an arbitration provision where the arbitration provision and the underlying deed in that covenant, the arbitration covenant in that underlying deed, specifically deals with the process on how to handle construction defects with respect to this property. And that those construction defects is what the Florida Supreme Court kind of articulated as the element that touches and concerns the land in order to find that that provision ran with the land and thus was binding on the Hayslips as a subsequent purchaser of the property. I think also very distinctively between Hayslip and the decision or in the court, the case before this court today is the fact that in Hayslip, the provision to be enforced was a deed that was actually signed by the party attempting to enforce it. What we have here is language from an easement agreement  by either of the parties to this appeal. But in that sense, the language expressly binds successors and assigns, does it not? The language of one provision does. However, the language that contains the fee provision, which I believe is subsection eight of the easement agreement specifically articulates an intent for the parties here too. But the other provisions say the parties also, right? The running with the land says grantor and grantee. And a lot of the other provisions, I don't believe touch on parties here too or grantor versus grantee. I think there is an overall deference under contract law and construction and interpretation that specific provisions like the language of the intention with respect to the fee provision of parties here too, the enforcement of parties here too. I'm sorry, Judge. Doesn't it also say all subsequent owners of the easement property? It says... The covenant running with the land provision. It says the covenant running with the land provision, correct. But that does not... It is our position on behalf of the appellee that it does not inure to enforcement against a non-successor, a non-signer, which is my client, the appellee, Crown Castle South. But other remedies are enforceable, right? The remedy to enforce the inequity, the right to... Of the survey in the state that is now owned by the appellant here, or excuse me, the appellant here, certainly they have the right to exercise their remedies in equity. And what gives them the right to get damages from the subsequent violator? The rights in equity for trespass, for example, which is what the damages at the trial... Those are not set forth in the agreement? No, they're not. They necessarily run with the land and their remedies. Correct. It is a remedy available to a landowner against an offensive entity who is trespassing on a property, whether or not there is a contract that potentially binds those parties. Why wouldn't, as a matter of... I mean, every once in a while, we have to sort of figure out how Florida courts would decide an issue by looking at not only prior decisions, but where we think the Florida Supreme Court in an area of tort law or contract law is headed with public policy. Why does it make sense to slice out an attorney's fee provision from the panoply of remedies available to an easement holder? I think it's clear, and it was clear in the district court's opinion, that in order to measure the fee provision here, as Judge Marchkis was articulating to my opposing counsel here, this touch-and-concern element to establish whether a provision runs with the land, whether any covenant runs with the land. I think the district court did a fantastic job of assessing that under what is the accepted standard as articulated in that Winn-Dixie v. Dolgan court case. And the district court articulated those three prongs in order to test whether this attorney fee provision did run with the land... Why would an arbitration provision touch-and-concern the land when you could just as easily say, if we don't make this touch-and-concern the land, you're going to have to go to a state court and get your remedy there? It's not like you're depriving a party of a remedy. You're just saying, go to a different forum, go to a different place, and yet that runs with the land. I don't... Well, I think there's a distinction to be made that attorney's fees for success in litigation is not a remedy. It is... What is it? It's a bonus. It's a remedy. It's a part of a remedy. The remedy would be the ability to bring the suit and secure damages. I disagree. I mean, you may think that it's not a remedy that touches-and-concerns the land, and I understand that argument, and you have support for it, and that's the way the district court went. But attorney's fees and costs are remedies to a winning party. The American rule says you don't get them absent statute or contract, but I don't know what you can describe them as other than a remedy. It is part of the panoply of remedies available to you. You can get a declaratory judgment. You can get injunctive relief. You can get damages. You can get specific performance. You can get attorney's fees. You can get costs. That's all the panoply of remedies. Now, you may be able to splice some of those out and say some of them touch-and-concern the land and some of them don't. I get that, but I think it's hard. I don't know. What would you describe them as? As I just did, Your Honor, I would describe the attorney fee provision here as the prevailing party provision, which is that kind of extra incentive if you are fortunate enough to be successful in litigation and are deemed to be the prevailing party because despite the fact that there is, yes, there is a prevailing party in every dispute that goes to a final judgment or a trial for a jury verdict or what have you, that does not automatically equivocate to an award of attorney's fees. That's an extra bonus. We have the American rule. We understand that, but again, it does go to the point of... I mean, I do think it's a remedy, but okay. Let me ask the question this way if I can. Your common intuitive sense would be that an arbitration proceeding itself is at least one step removed from the enjoyment. Attorney's fees are removed in some sense logically from the enjoyment. Why is the arbitration proceeding different from the attorney's fees, at least insofar as they are both analytically removed at least one degree from the actual enjoyment? We could all agree it would be an easy case if you're talking about mineral rights or the crops or something like that. They obviously run with the land. They're integral to the land. I don't have to jump from A to B to get there. Arbitration requires a jump. The Supreme Court of Florida chooses to make that jump. Attorney's fees, they haven't answered. Is it different in kind from the arbitration proceeding or is it just analytically a step distinct? But it is a remedy that a party may be entitled to. Arbitration is the method by which the adjudicator decides. Attorney's fees is a remedy you give to a successful party under circumstances. So it's different in that sense. But they both seem to be to be removed from the enjoyment and occupation of the land. Do they advance the value of the land? Well, I could make that argument either way, I suppose. But aren't we left, even assuming arguendo, we read what I think is crystal clear, that in Cork the 5th DCA had two alternative holdings, but the issue there was not the same issue here. It wasn't attorney's fees. It was a step removed. And it's not hayslip, it's not arbitration, which was also a step removed. Why shouldn't we, to go back to the question that Judge Jordan asked your colleague a moment ago, why shouldn't we certify the question and ask the Florida Supreme Court to tell us where one thing is analytically distinct and yet it runs with the land, and another thing is analytically distinct and maybe it isn't. And now we have a third question, which is analytically removed at least one step. One is a remedy, and one is a method by which to adjudicate. Thank you for your question, Judge DeMarcus. I think it's important to recognize that in hayslip, the Florida Supreme Court clearly looked at the specific facts of that case and with the language of the underlying deed, what resulted in the filing of the lawsuit, which was a construction defect that the new homeowners identified with respect to a stucco and filed an action against the original builder who was responsible for that underlying construction defect. I think the court properly looked at those specific facts in connection with the language of the deed and the covenant that required arbitration for any disputes in order to determine that that covenant touched and concerned the land in such a way that it was enforceable against the new owner of the property. I think, on the other hand, in the Caulk case, the Fifth DCA, again, properly looked at the specific facts of the case. The deed from the original grantor, Caulk, who then sought, I think, Judge Marcus, you said, 15 years later to intervene to secure proceeds in a condemnation proceeding when Orange County ultimately took the property or condemned the property from the then-current owner. Again, the Fifth DCA looked to the specific language of that grant in the deed from the original owner to the next in-line owner, which said, specifically, personal kind of a guarantee that any condemnation proceeds were the property to be condemned be paid to the grantee herein, I think, is the language. So I think looking there, and then looking at the subsequent deeds after that second-in-time owner and seeing that the language that was intended to provide the original owner, the original grantor, with those condemnation proceeds did not transfer or articulate or was not incorporated by reference into those subsequent deeds. I think an important case in a similar vein and which kind of points out the distinction between the two and maybe draws the two a little bit closer together is another Supreme Court case, that Palm Beach County v. Cove Club Investors, LTD, which is a 1999 case. The site, if you need it, is 734 Southern 2nd, 379. In that case, that was an inverse condemnation proceeding where Palm Beach County had sought and secured ownership by condemnation to a parcel of land that was subject to a declaration of homeowners association or neighborhood that bound the landowner, whoever that may be, to payment of a certain amount of dues per month to the club, to Cove Club, not only for the use and enjoyment of the common facilities, the recreational facilities, the golf club, that were common in that community, but also to help offset the cost to the club of the maintenance and the operation of those recreational facilities of that golf club, which were for the use and enjoyment of all owners or landowners in that property. And there, the Supreme Court properly, again, looked at the individual facts of the declaration of the covenant and investigated the taking by Palm Beach County to determine that that was a covenant, the requirement to pay money for the club dues, which I think were $15 a month. That was a covenant that ran with the land because the mere taking by Palm Beach County of the property did not cancel out the club's requirement to have to maintain those facilities for the benefit and the enjoyment of other residents, so it touched and concerned the land. Sorry, Judge. Let me get back to Judge Marcus' question. This is me speaking only. I don't speak for Judge Legault or for Judge Marcus on this point, but it seems to me that there's at least a little bit of disagreement and dissonance between Caulk and then Harvey later putting aside Hayslip. They both deal with the same issue, which is a different issue than ours. It's the ability to get proceeds from a condemnation, and they end up in different places. One says, no, it doesn't run with the land, so if you're a successor, no, and the other one goes the other way and rejects the argument based on Caulk that it shouldn't run with the land. Back to Judge Marcus' question, should we certify to the Florida Supreme Court? I don't think so. I think, again, it comes down to a factual distinction, and the court in Harvey, if I'm not mistaken, again looked at the specific language of the underlying deeds that articulated the intent for the ability to recover condemnation proceeds. In Harvey, it specifically says that the language in Harvey says the party is intended to bind all successors and assigns, and that's the same language in this case, is it not? That is the language in the covenant, in the specific covenant that talks about covenants generally running with the land, but again, I think it's a matter of specific contractual language, which is where the fee provision is located, where it talks about the parties hereto enforceable by the parties hereto, enforceable against the parties, or the prevailing party in an action brought by the parties hereto. I think that's the distinction that rings true with respect to this case, and I know you guys have, your great questions have taken me over my time, so I'm happy to answer any others that you may have. I have one other. Yes, please. I was able to find, it's clear that there are a number of cases in non-Floridian jurisdictions, three, Paloma, Lundberg, and Keough, all address the issue of whether an attorney's fee provision runs with the land and binds a non-covenanting party, and they all say it doesn't. Are there also cases out there in other jurisdictions that have gone the other way, to the best of your knowledge, and have said that it is a covenant that runs with the land? I do not believe there are other cases, and as you point out, Judge, in the district court's opinion, it specifically cites, too, I think, several of those cases that you mentioned. I've reviewed those, but what I'm asking is, did I miss it, or is there anything out there going the other way, or would it be fair to say that to the extent any state appellate court has addressed the question of attorneys' fees, not arbitration, not these other issues, but fees, that that doesn't run with the land? I believe that's the correct statement, Your Honor. I don't know of any other decisions from any court in the United States that has ruled the other way. Reached a different conclusion on fee-shifting provision, et cetera. Correct. Thank you very much. Thank you very much. Appreciate your time. Let me just suggest that there may be one, at least one. It doesn't arise in an easement context, but neither do some of the others. And it's Jack Mathis, General Contractors v. Murphy, decided by the Supreme Court of Oregon in 1970, and the citation is 472 Pacific Reporter 2nd at 820. And it disagrees with some of the ones that Judge Marcus mentioned, not all of them. It disagrees with Latsos, for example, from the Supreme Court of Utah in the 1940s. But I think Judge Altonaga was right in saying that the majority position is what Judge Marcus described. That seems to be the majority rule, but I don't think it's unanimous, although there's not much law out there. Okay, Mr. Pierre. And let me ask you, Mr. Pierre, to help us on the same question that I just asked your colleague. Do you know of any other jurisdiction, particularly in an easement context, which is what we're talking about, which runs with the land, do you know of any court that has ever held that the attorney's fee provision actually runs with the land in an easement kind of setting? I don't want you to quote me on this, but in my research, I do believe I came across a case out of Washington in which it essentially said, but it was based off of a statutory provision that gave an alternative. So I don't know if there's an exact case on point, but I can supplement to the court if you would like. The one you're talking about is South Dakota, I think. Exactly, Your Honor. That's Prairie Hills Water versus Gross. And it is 653 Northwest 2nd, 745, South Dakota Supreme Court, 2002. But that has a statute in South Dakota that sort of talks about incidental covenants running with the land. And the Supreme Court said that an attorney's fee provision, in their view, was incidental and therefore ran with the land. So you're right, that one has a statutory issue that we don't have present here. So that would be good if we could hang our hat on a statute, but we don't have a statute here. You can hang your hat on Hayslip. Correct. Well, I'd like to be able to if I could. The only problem is that arbitration, while I think it is a step removed, and yet it runs with the land, is conceptually different in some ways from the remedy of an attorney's fees. And it's not quite the same thing. The arbitration is designed to get somewhere to improve the actual enjoyment. And occupation of the land. Whereas the fees provision simply says at the end of the day, the lawyers are going to find a pot of gold. There's just some money there and some cash is going to change hands. But it doesn't really bear directly and immediately, it seems to me, on enjoying and occupying or improving the land. What am I missing there? Again, I hate to sound like a broken record, but Hayslip quotes the test that is quoted from Mull, which basically says, tends to necessarily enhance the value of the property or renders it more convenient and beneficial to the owner. The purpose is not to enrich attorneys. The purpose is to make the litigant whole for vindicating important property rights. In this case, as I said before, it was about their client digging up a hole in my client's property where they didn't have the right to do so. My client expended approximately $300,000 to get $40,000. No rational property owner would proceed with an enforcement action when they would lose more to enforce than they would to... They would lose more from enforcing the provision than they would if they sat back and did nothing at all. I would also like to have this court affirm on an alternative. Your argument really is that, in essence, for them to enforce the covenant running with the land in order to enjoy their property, they had to file this lawsuit. As a result of it, they're seeking their fees in order to recoup for having to try to enjoy their land. In order to do that, they had to enforce the covenant. To get to the injury to the property, my client had to expend funds to get there. You do not get the damages until you have, in most cases, plaintiffs' attorneys like me will not take cases where there is no incentive and where most people cannot afford attorneys to prosecute this till trial. This was a lengthy trial, and in order to vindicate the client's property right, he needed competent attorneys. The attorney's fees provision does that. Your Honor, I would like to make one note regarding the alternative grounds that this court could rule on. The plain language of the easement agreement. No one has contested that the introductory clause says that all of the provisions are binding on successors. They're denominated. No one contests that the same language, and I believe Judge Lagoa pointed out the covenant running with the land, binds and nears to the benefit of subsequent owners as well as all those who claim through them. No one contests that in the remedies provision, the remedies provision provides anyone who has the right to enforce shall be entitled to attorney's fees. If this court is at all concerned on whether the issue of Florida Supreme, at all is concerned with whether to decide the issue without reverting to the Florida Supreme Court, this court can independently decide it on the plain language of the easement agreement. All right, Mr. Pierre, Ms. Khan, thank you both very much. Thank you. We are done for the week.